IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALNESHA BONDS

    Plaintiff,

      v.

FRANK BISIGNANO,
Commissioner of Social Security,

    Defendant.

: Civil No. 1:25-CV-1559
:
:
:
:
: (Chief Magistrate Judge Bloom)
:
:
:
:

## MEMORANDUM OPINION

## I.    Introduction

Alnesha Bonds was found to be disabled pursuant to Sections 223(d) and 1614(a)(3)(A) of the Social Security Act in a January 2012 decision.[1]   Following a Continuing Disability Review ("CDR"), state agency medical consultants found that Bonds was no longer disabled as of February 1, 2020, and her benefits ceased.[2]   Bonds appealed and was granted a hearing before an Administrative Law Judge ("ALJ"), and the ALJ affirmed the cessation.[3]   Bonds appealed to the Appeals Council ("AC") who remanded the matter back to the ALJ, who in turn reaffirmed

---

[1] Tr. 133-38.
[2] Tr. 142-53.
[3] Tr. 160-71.

cessation.[4]  The AC denied another request for review, rendering the ALJ's reaffirmance of cessation the final decision in this matter.[5]

Bonds now appeals this decision, arguing that the decision is not supported by substantial evidence.  After a review of the record, we agree and conclude that the ALJ's decision is not supported by substantial evidence.    Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

Bonds was initially awarded disability due to her severe impairments of attention deficit hyperactivity disorder ("ADHD"), dyslexia, dysthymic disorder, history of right patella subluxation, and obesity.[6]  Bonds was 18 years old at the onset of disability, had a limited education, and had no past relevant work.[7]  Her case was reviewed by the Social Security Administration pursuant to a seven-year periodic review in January of 2022.[8]  Dr. Carl Ritner and disability adjudicator Kimberly

---

[4] Tr. 7-29.
[5] Tr. 1-6.
[6] Tr. 165.
[7] Tr. 137.
[8] Tr. 152.

2

Saline concluded Bonds had shown medical improvement sufficient to qualify her for sedentary work, and that she could work jobs such as an addresser, table worker, or order clerk–food and beverage.[9]

The medical record regarding Bonds' impairments revealed that in 2021, Dr. Kathleen Ledermann diagnosed Bonds with the mental health impairments of ADHD, bipolar I with psychotic feature, generalized anxiety disorder with panic attacks, and PTSD.[10]  At a 2022 visit to Chambersburg hospital, Dr. Joseph Polinski diagnosed Bonds with hypertension, premature ventricular contraction, and palpitations.[11] Records from 2023 document Bonds' obstructive sleep apnea, dyslipidemia, dyslexia, and severe obesity.[12]  In 2024, Dr. Henry Ching confirmed that Bonds suffered from mild degenerative disc disease at L4-5 and L5-S1, and degenerative facet joint disease of a mild degree at L4-5 and L5-S-1.[13]  Also in 2024, Bonds' treating provider, Certified

---

[9] Tr. 152.
[10] Tr. 980.
[11] Tr. 1080.
[12] Tr. 1159.
[13] Tr. 1299.

Physician Assistant ("PA-C") Andrew Stowell noted Bonds had several marked limitations due to her mental health.[14]

After her CDR resulted in a denial, Bonds appealed to an ALJ, who held a hearing reconsidering her CDR on March 15, 2022.[15] Bonds and a Vocational Expert ("VE") both appeared and testified at this hearing.[16] Following this hearing, the ALJ issued a decision denying Bonds' application to reinstate her benefits.[17] The ALJ found that substantial evidence supported that Bonds had the residual functional capacity ("RFC") to perform light work with specific limitations, and that she could perform work that existed in substantial numbers in the national economy.[18] Bonds appealed this decision, and the AC remanded, finding that the ALJ had incorrectly evaluated her application under the post-2017 rules, failed to evaluate one of the medical opinions in the record, and improperly analyzed Bonds' prior work as a home health aide.[19] The

---

[14] Tr. 1217-19.
[15] Tr. 72-98.
[16] *Id.*
[17] Tr. 160-71.
[18] *Id.*
[19] Tr. 180-81.

AC's remand to the ALJ included several instructions, including to obtain evidence from a VE, as necessary, to "clarify the effect of the assessed limitations" to Bonds' occupational base.[20]

It is against the backdrop of this record that an ALJ held another hearing on Bonds' application on June 7, 2024.[21] Bonds and a VE both testified at this hearing.[22] Following this hearing, on July 15, 2024, the ALJ issued a decision denying the plaintiff's application for reinstatement of disability benefits.[23] The ALJ first concluded that Bonds had last been found disabled on January 5, 2012, which was the comparison point decision ("CPD"), and at the time of the CPD Bonds suffered from medically determinable impairments of degenerative joint disease of the right knee; obesity; and depression.[24] The ALJ then determined that Bonds had not engaged in substantial gainful activity through July 15, 2025, the day of the decision.[25] At Step 2 of the

---

[20] Tr. 181.
[21] Tr. 39-70.
[22] *Id.*
[23] Tr. 10-19.
[24] Tr. 12.
[25] *Id.*

sequential analysis that governs disability claims, the ALJ found that the medical evidence established Bonds had not developed any additional impairments since the CPD.[26]  At Step 3, the ALJ concluded that none of Bonds' impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[27]

Between Steps 3 and 4, the ALJ concluded that medical improvement had occurred on February 1, 2020, and that since that date, Bonds:

> [H]as had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can sit 6 hours, and stand or walk for 4 hours each in an 8-hour workday. The claimant can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolds. The claimant is precluded from concentrated exposure to vibration, unprotected heights, and moving machinery parts. She is limited to simple, repetitive and routine tasks. The claimant cannot work at a production rate pace.[28]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence,

---

[26] *Id.*

[27] *Id.*

[28] Tr. 14.

and Bonds' reported symptoms.  With respect to the medical opinion evidence, the ALJ considered eight medical opinions.  The ALJ assigned limited weight to the opinions of Dr. Thomas Fink and Dr. John Gavazzi, who both opined Bonds had no severe mental health impairments.[29]  The ALJ found those opinions were not supported by the record as a whole and were inconsistent with evidence that Bonds sees a psychiatrist once a month.[30]

The ALJ also assigned limited weight to the opinions of Dr. Michael Brown, Dr. Kathleen Ledermann, and PA-C Andrew Stowell.[31]  Dr. Brown had opined that Bonds had no limitations regarding climbing ladders, ropes, or scaffolds, but the ALJ found this conclusion was inconsistent with evidence that Bonds had right knee pain and her testimony that she uses a knee brace, and was not supported by the record as a whole.[32]

---

[29] Tr. 16.
[30] *Id.*
[31] Tr. 16-17.
[32] *Id.*

Dr. Ledermann opined that Bonds had mild restrictions to her abilities to understand, remember, and carry out simple instructions, moderate restriction to her ability to make judgments on simple work related decisions, moderate to marked restrictions to her ability to understand and remember complex instructions, marked to extreme limitations to her ability to carry out complex instructions, and extreme limitations to her ability to make judgments on complex work-related decisions.[33]  Mr. Stowell had opined that Bonds had marked limitations to her abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted, and respond appropriately to changes in a workplace setting.[34]  The ALJ found these opinions were not supported by the record as a whole and were inconsistent with both Dr. Ledermann's statement that Bonds denied

---

[33] Tr. 982.
[34] Tr. 1217-18.

suicidal or homicidal ideation and Mr. Stowell's observation that Bonds has average intellectual functioning and good judgment.[35]

The ALJ assigned great weight to the opinions of Dr. Carl Ritner, Disability Hearing Officer Jennifer Speck, and Dr. Ahmed Kneifati.[36] Dr. Ritner's opinion was that Bonds was capable of light work, and Ms. Speck opined that Bonds had shown medical improvement since the CPD.[37] The ALJ found those opinions were supported by the record as a whole, and consistent with Bonds' statement to Mr. Stowell that she was doing well regarding her depression and with Dr. Kneifati's statement that Bonds cooks, cleans, and does laundry.[38] As for Dr. Kneifati's opinion, he concluded that Bonds could perform light work, and the ALJ found that conclusion supported by the record as a whole and consistent with Dr. Kneifati's own findings that Bonds had a normal gait and 5/5 strength in her upper extremities.[39]

---

[35] Tr. 17.
[36] Tr. 16.
[37] *Id.*
[38] *Id.*
[39] *Id.*

9

With respect to Bonds' symptoms, the ALJ found that Bonds' statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[40]   The plaintiff testified in 2024 that her ADHD had not improved, her bipolar disorder had gotten worse, she met with a psychiatrist every week, her knee pain had gotten worse, and while she had served as a caretaker for her mother she had proved incapable of fulfilling that role for other people as other tasks associated with that position (such as cleaning or lifting) were too demanding.[41]   She also testified at length about her depression, her bipolar disorder, and the associated symptoms, her medication regimen and the frequent changes to it, and her knee pain.[42]   The ALJ declined to ask any questions of the VE.[43]   Bonds' attorney asked the VE hypothetical questions about the work available to a person with limitations like those Bonds alleged, and the VE testified there would be no work for someone so limited.[44]

---

[40] Tr. 15.
[41] Tr. 47-53.
[42] Tr. 54-66
[43] Tr. 66.
[44] Tr. 69-70.

10

The ALJ ultimately found Bonds' testimony to be inconsistent with the objective clinical findings.[45]    The ALJ recounted the objective evidence during the alleged disability period, highlighting a normal x-ray of Bonds' right knee in September of 2020, records of Bonds walking with normal gait, and no obesity-related health complications.[46]  The ALJ also noted evidence that Bonds, *inter alia,* showed insight and judgment within normal limits, had no major mood swings, was never hospitalized for psychiatric reasons, and denied suicidal or homicidal ideation.[47] Ultimately, the ALJ concluded that Bonds was not as limited as she alleged.

Having made these findings, the ALJ found that Bonds' medical improvement was related to her ability to work since the improvement resulted in increased RFC.[48]  He also found that Bonds' impairments of degenerative joint disease of the right knee, obesity, and depression were still severe impairments.[49]  At Step 4, the ALJ found Bonds had been

---

[45] Tr. 15.

[46] *Id.*

[47] Tr. 16.

[48] Tr. 17.

[49] *Id.*

11

unable to perform her relevant past work but found at Step 5 that she could perform the occupations of fundraiser II, apparel stock checker, and office helper.[50]  Accordingly, the ALJ found that Bonds' disability ended February 1, 2020, and she was not disabled since that time.[51]

This appeal followed.  On appeal, Bonds argues, *inter alia,* that the ALJ erred by rejecting evidence from the VE without a proper explanation.[52]  This case is fully briefed and is ripe for resolution.[53]  For the reasons set forth below, we will remand this matter for further consideration by the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-

---

[50] Tr. 17-19.

[51] Tr. 19.

[52] Because we find that the ALJ's treatment of VE testimony necessitates remand, we do not reach Bonds' other allegations of error.

[53] Docs. 9, 14.

maker are supported by substantial evidence in the record.[54]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[55]   Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[56]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[57]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[58]  The court must "scrutinize

---

[54] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[55] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[56] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[57] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[58] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

the record as a whole" to determine if the decision is supported by substantial evidence.[59]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[60]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[61]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[62]

---

[59] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[60] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[61] *Id.*

[62] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at \*1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[63] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[64]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[65]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[66]

---

plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[63] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[64] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[65] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[66] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[67] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[68] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[69]

---

[67] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[68] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[69] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

16

In making this determination, the ALJ follows a five-step evaluation.[70]    The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[71]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[72]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[73]  Our review of the ALJ's determination of the plaintiff's RFC

---

[70] 20 C.F.R. §§404.1520(a), 416.920(a).
[71] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[72] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[73] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

is deferential, and that determination will not be set aside if it is supported by substantial evidence.[74]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[75] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[76]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of

---

[74] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[75] *Mason*, 994 F.2d at 1064.

[76] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

determining an RFC."[77]    Additionally, in cases that involve no credible

medical opinion evidence, courts have held that "the proposition that an

ALJ must always base his RFC on a medical opinion from a physician is

misguided."[78]

Given these differing approaches, we must evaluate the factual

context underlying an ALJ's decision.    Cases that emphasize the

importance of medical opinion support for an RFC assessment typically

arise in the factual setting where well-supported medical sources have

found limitations to support a disability claim, but an ALJ has rejected

the medical opinion based upon an assessment of other evidence.[79] These

cases simply restate the notion that medical opinions are entitled to

careful consideration when making a disability determination.  On the

other hand, when no medical opinion supports a disability finding or

when an ALJ relies upon other evidence to fashion an RFC, courts have

routinely sustained the ALJ's exercise of independent judgment based

---

[77] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[78] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).
[79] *Biller*, 962 F. Supp. 2d at 778–79.

upon all the facts and evidence.[80]  Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[81]

### C. This Case will be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[82] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[83]  After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Bonds argues that the ALJ erred by failing to explain why he credited the testimony of the 2022 VE over that of the 2024 VE.  We agree.

While an ALJ has broad discretion as to whether to credit a given piece of evidence, it is well settled that the ALJ cannot "cannot reject

---

[80] *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[81] *Burns,* 312 F.3d 113.

[82] *Cotter,* 642 F.2d at 704.

[83] *Schaudeck v. Comm'r of Soc. Sec.,* 181 F. 3d 429, 433 (3d Cir. 1999).

evidence for no reason or for the wrong reason."[84]  When an ALJ does not reference a piece of apparently probative evidence, nor leave sufficient indicia of consideration for the court to trace the reasoning that led to the omission, that amounts to a rejection of that evidence without a reason. That is what occurred here.

Two VEs gave opinions in this matter, one in 2022,[85] one in 2024.[86] But in his decision, the ALJ discussed *only* the 2022 opinion.[87]  The omission is significant, particularly because the VE testimony from 2024 indicated that, if Bonds was found to be as limited as the hypothetical claimant the VE was discussing, she would "not be able to participate" in the labor market—that is, she would have to be found disabled.[88]  The ALJ was obligated to explain why this testimony was unpersuasive and why he credited the 2022 testimony instead.  That responsibility was especially important given contextual differences between the proceedings—Bonds was represented in the 2024 testimony but was pro

---

[84] *Mason*, 994 F.2d at 1066.
[85] Tr. 89-93.
[86] Tr. 67.
[87] Tr. 18-19.
[88] Tr. 70.

se in 2022; a large volume of additional medical records informed the 2024 testimony; and the AC's specific instruction to the ALJ on remand to acquire VE input as warranted on the expanded record, which contained nearly 2500 pages of new evidence.[89]   If the new medical records truly warranted no VE input despite the AC's instruction to consider that specific possibility, the ALJ needed to explain that conclusion.

In his brief in opposition, the Commissioner chose not to respond directly to this apparent shortcoming.  His response instead focuses on other portions of the decision that, in the Commissioner's view, show the decision was supported by substantial evidence.  That is not responsive, and the absence of any explanation from the ALJ or the Commissioner as to the lack of consideration of the 2024 VE testimony leaves this court to guess as to the reason for its absence.  Given that crediting the 2024 testimony could have led to a finding of disability, the error is not harmless.

---

[89] Tr. 1356-3842.

22

Accordingly, a remand is required for further consideration of these issues.  While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter.  Rather, that task is left to the ALJ on remand.

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: May 1, 2026.

23